[Civ. No. 10424. Second Appellate District, Division One.—January 22, 1936.]

In the Matter of MARINE BANK OF SANTA MONICA (a Banking Corporation) in Liquidation. FRIEND W. RICHARDSON, as Superintendent of Banks, etc., Appellant, v. WINIFRED Z. COWEN, Respondent.

Clock, McWhinney & Clock for Appellant.

Hugh K. McKevitt for Respondent.

ROTH, J., *pro tem.*—The Marine Bank of Santa Monica (hereinafter referred to as "bank") was closed for liquidation on December 18, 1931, on which date the Superintendent of Banks of the State of California took charge of the bank and continued in charge thereof during all of the instant proceedings. Prior to that time Harry Cowen, who was a director and stockholder of the bank, had deposited in a special savings account with the bank the sum of $3,369.02 in the names of Winifred Z. Cowen (who was also a stockholder of the bank) or Harry Cowen. Winifred was the wife of Harry. Sections 26 and 27 of the Bank Act provide that a bank having several departments is required to keep the books, deposits, reserves, cash, securities, investments and transactions relating to each department separate from each of the other departments (sec. 26, Bank Act, Stats. 1931, p. 341; vol. 1, Deering's Gen. Laws, p. 241), and that all money and assets belonging to each department, whether on hand or with other banks, and the investments made, shall be held solely for the repayment of the depositors and other claimants of each such department until all depositors and other claimants of each such department shall have been paid. (Sec. 27, Bank Act, *supra.*) When Harry Cowen opened the special savings account the signature card which he signed stated on its face that it was a commercial department account. It appears also without contradiction that the account was always treated by the bank on its books and for all purposes as a commercial department account. Upon the liquidation of the bank, Winifred Z. Cowen filed with the state banking department a claim which also recited on its face that it was against the commercial department of the bank. The claim of Winifred against the bank was rejected as a general claim by the Superintendent of Banks, but was allowed as a deferred claim against the commercial department of the bank, to be paid only after the nonstockholding depositors should have been paid in full. At the time of the present litigation the bank in liquidating its assets had paid to creditors of the commercial department 42½ per cent and to creditors of the savings department 65 per cent.

When the claim of Mrs. Cowen was rejected, as stated, she set out to prove that, although the special savings account was opened in the names of herself and husband, the account was

in fact her sole and separate property; and that, although there was stock issued by the bank to herself and to her husband, which stock stood on the books of the bank as so issued and so held, the stock was in fact her husband's stock as his sole and separate property. To establish this position an action for declaratory relief was brought prior to the instant proceeding, entitled *Winifred Z. Cowen et al.* v. *Edward Rainey,* the then Superintendent of Banks, and the bank, being action No. 343999, records of the Superior Court of Los Angeles County, hereinafter referred to as the Cowen case. By the Cowen case it was established that the money in the special saving account was the sole and separate property of Winifred Z. Cowen, and that the money which purchased the stock of the bank which had been issued to both the Cowens was in fact the separate property of Harry Cowen.

On the first of these issues, the findings in the Cowen case recited in part as follows: " . . . that said deposit was the proceeds of separate property distributed to the plaintiff, Winifred Z. Cowen, from the estate of her uncle; that as between the plaintiffs it was intended that said sum should remain the separate property of said Winifred Z. Cowen even though the same was deposited under the names of Winifred Z. Cowen or Harry Cowen; that it was the intention of the plaintiffs that as to said sum, Harry Cowen was merely the agent for Winifred Z. Cowen for the purpose of withdrawing any funds therefrom needed by Winifred Z. Cowen; . . . "

As to the ownership of the stock, the court in the Cowen case found as follows:

" . . . that the certificates evidencing said ten (10) shares of stock were caused to be issued in the joint names of plaintiffs at the sole instance and request of the plaintiff, Harry Cowen, and without the knowledge or consent of the plaintiff Winifred Z. Cowen; that the plaintiff Winifred Z. Cowen did not discover that said stock certificates were issued in said joint names, or that the plaintiff Winifred Z. Cowen's name appeared as a stockholder of said bank on the books of said bank until after the defendant, Edward Rainey, as such Superintendent of Banks, took possession of the business and property of said bank; that at no time did the plaintiff Winifred Z. Cowen consent to be a stockholder of said bank and at no time did plaintiff Winifred Z. Cowen consent to the issu-

ance of any shares of said bank in her name or in the joint name of herself and her husband, Harry Cowen; . . . ''

Thereupon the court said in its findings in said Cowen case:

''As Conclusions of Law from the foregoing the Court holds and finds that the claim of the plaintiff Winifred Z. Cowen, hereinbefore referred to, representing three thousand three hundred sixty-nine dollars and 02/100 ($3369.02) deposited in a Special Savings Account in said Bank in the names of Winifred Z. Cowen or Harry Cowen is allowed and established as a general claim in favor of the plaintiff Winifred Z. Cowen and against said Marine Bank of Santa Monica, a corporation, and the capital and assets and properties thereof, payable with the claims of all non-stockholding depositors of said Bank.''

There was no appeal from the judgment in the Cowen case which was in consonance with the findings and conclusions recited, and the judgment therein is now final. It will be observed from the foregoing that the judgment in the Cowen case decided Mrs. Cowen's contentions in her favor, except that the findings in said case do not, nor does the judgment, determine whether the special savings account of Mrs. Cowen was in fact with the commercial department of the bank, or with the savings department.

In order to determine this final question, Mrs. Cowen commenced the instant proceeding in the within entitled liquidation action by requesting the superior court to issue an order to the Superintendent of Banks requiring him to show cause why the claim of Mrs. Cowen should not be treated as a claim against the savings department of the bank. This order was issued upon affidavits made by Mrs. Cowen and others on her behalf, which recited in great detail the history of the claim as we have generally outlined the same, and specifically advises the court that by reason of the failure of the Superintendent of Banks to treat the claim of Mrs. Cowen as one against the savings department of the bank, she was damaged to the extent of $22\frac{1}{2}$ per cent of her claim, said percentage being the difference between the rate of payment of claims against the savings department over claims against the commercial department. The order was heard entirely on affidavits, and the trial court then decided that the claim of Mrs. Cowen should be allowed against the savings department

of the bank, and made its order accordingly. Superintendent of Banks appeals from that order.

■ The affidavits filed showed nothing in addition to what has been generally recited, except that Mr. Cowen, a stockholder and director of the bank, thought that when he opened the special savings account with the bank it was with the savings department of the bank, and referred to an inadvertent admission in the answer of the Superintendent of Banks in the Cowen case, which calls the account of Mrs. Cowen a savings account. The recital of facts thus far given makes clear that the card signed by Mr. Cowen when he opened the account stated on its face that it was with the commercial department of the bank. It is also clear from Mrs. Cowen's repeated and insistent admissions, as well as from the findings and judgment in the Cowen case, that Mr. Cowen was the duly authorized agent of Mrs. Cowen to open a special savings account. We have scrupulously examined the affidavits, and while much is made of phrases such as ''special savings'' and ''savings'' and the connotations of the respective terms, and although some of the averments in the affidavits filed in support of Mrs. Cowen's claim are in substance that the Cowens thought or were told that a special savings account was a ''saving account'' with special privileges, all of which averments are specifically and vigorously denied by the affidavits filed by the officers of the bank, who assisted in the opening of the account, there is *nothing* in any of the affidavits filed to support Mrs. Cowen's position which asserts or avers that the special savings account was with the *savings department* of the bank, or that the Cowens, or either of them, *was told that the special savings account was with the savings department of the bank.* Neither is there any recital of facts in any of the affidavits from which it can be reasonably inferred that Mr. Cowen or Mrs. Cowen were ever led to believe that such was the situation. We are able to discover no evidence that the special savings account was ever opened with the savings department of the bank. The averments in the affidavits, without the aid of so decisive a piece of evidence as the card originally signed by the duly authorized agent of Mrs. Cowen, to wit, her husband, when the special savings account was opened, do in fact demonstrate that Mr. Cowen, a stockholder and director of the bank, knew that a ''special savings'' account was with the commercial depart-

ment of the bank. It is also worth noting that, after making the original alleged mistake as to which department of the bank handled special savings accounts, both Cowens made the same mistake when a claim was originally filed with the Superintendent of Banks. This claim was made on a form entitled ''commercial department''. In explanation of this fact, both Cowens say in their respective affidavits: '' . . . that although said claim was on the form entitled, 'Commercial Department', said affiant and his wife did not understand the purport thereof, nor was it explained to them, in so far as the words 'Commercial Department' appearing in said claim were concerned; that affiant and his wife believed that said claim was similar to any claim made for a regular savings account in said bank; . . . '' This explanation we regard as a lame one, when considered first as against the uncontroverted and incontrovertible fact that Mr. Cowen as the admitted and adjudicated, duly authorized agent of Mrs. Cowen signed the contract with the bank to make a deposit for Mrs. Cowen with the commercial department of the bank, and when considered secondly as against such evidence as the original claim filed against the commercial department of the bank and signed by Mrs. Cowen herself.

We find no evidence to support the order of the trial court. Upon well-settled principles of law the order appealed from is reversed. Since the facts are uncontroverted, the trial court is ordered to deny the application of Winifred Z. Cowen to have her claim declared a claim against the savings department of said bank.

York, Acting P. J., and Doran, J., concurred.